UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMISSION,<br><br>   *Plaintiff*,<br><br> v.<br><br>JUAN CAMPO,<br><br>   *Defendant*. | Civil Action No. 24-2198 (TJK) |

**MEMORANDUM OPINION**

  In July 2024, the Securities and Exchange Commission sued Juan Campo for several statutory and regulatory violations he allegedly committed from 2019 to 2022. Because Campo lives in Colombia, the Commission asked the Court for permission to serve him by email, which the Court granted. Still, Campo failed to timely respond, so the Clerk of Court entered default against him. Campo, appearing pro se, now moves to set aside the Clerk's entry of default and dismiss the complaint for insufficient service of process. He argues that the Court erred in permitting email service because both the Hague Service Convention and the Constitution's Due Process Clause prohibit such service. The Court disagrees on both fronts. Thus, while the Court will grant Campo's motion to set aside the default, it will deny his motion to dismiss.

**I. Background**

  The SEC alleges that from July 2019 to at least July 2022, Campo was the President and CEO of View Systems, Inc. ECF No. 1 ¶¶ 1, 7. View Systems is a Colorado corporation with its principal place of business in Maryland, and it has been registered with the SEC since August 1999. *Id.* ¶¶ 10–11. For most of its existence, View Systems manufactured and sold security and

surveillance products, including a scanner that purportedly could detect concealed weapons. *Id.* ¶ 14. By 2018, however, it had "stopped selling its products almost entirely." *Id.* So when Campo joined View Systems in 2019, the company was generating almost no revenue. *Id.* ¶ 15. The SEC alleges that, to artificially inflate the value of the company, Campo engaged in several fraudulent schemes. *Id.* ¶¶ 1–4.

Thus, the SEC filed a civil enforcement suit against Campo for violating several provisions of the Exchange Act and SEC rules. ECF No. 1 ¶¶ 70–81. By that point, however, Campo had moved to Colombia. ECF No. 8 ¶ 3. So in August 2024, the SEC began the process of serving Campo through the Colombian central authority under Article 5 of the Hague Service Convention.[1] *Id.* ¶ 8. Rather than wait on that process, the SEC also moved for "confirmation" that it could serve Campo via email under Federal Rule of Civil Procedure 4(f)(2)(A) or, alternatively, for permission to serve Campo via email under Rule 4(f)(3). ECF No. 7. The Court granted the Rule 4(f)(3) aspect of the motion, Min. Order of Sept. 24, 2024, and the SEC served Campo the same day, ECF No. 10-1 ¶¶ 2–3. Campo never responded, so the Clerk of Court entered default against him. ECF No. 14.

Just over a month later, Campo, proceeding pro se, appeared and filed his Motion to Dismiss Default Judgment for Insufficient Service of Process. ECF No. 15. No default judgment has yet been entered, so the Court construes his motion as one to set aside the Clerk's entry of default. *See* Fed. R. Civ. P. 55(c). Campo also requests that the complaint be dismissed under Rule 12(b)(5) for insufficient service of process. ECF No. 15 at 10. The SEC opposes in part. While it does not

---

[1] The Hague Service Convention's official name is the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638.

oppose Campo's request to set aside the entry of default, it opposes dismissal of the complaint. ECF No. 16 at 3. Because of the "strong policies favoring the resolution of genuine disputes on their merits," *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980), and the SEC's non-opposition, the Court will set aside the entry of default. What remains is Campo's request to dismiss the complaint.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(5) governs a motion to dismiss for insufficient service of process. "Upon such a motion, the plaintiff carries the burden of establishing that he has properly effected service." *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). "To do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 [(which governs summonses)] and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007). Failure to effect proper service is thus a "fatal" jurisdictional defect and is grounds for dismissal. *See Tom Sawyer Prods., Inc. v. Progressive Partners Achieving Solutions, Inc.*, 550 F. Supp. 2d 23, 26 (D.D.C. 2008).

## III.   Analysis

Campo's argument that he has not been properly served is twofold. First, he claims that service by email violates the Hague Service Convention and is therefore not authorized by Federal Rule of Civil Procedure 4. Second, he argues that, even if email service complies with Rule 4, it still violates due process. The Court disagrees.

      **A.      The SEC's Service on Campo by Email Was Not Prohibited by the Hague Service Convention**

Rule 4(f), which governs service on individuals in foreign countries, provides three pathways for plaintiffs to serve defendants overseas. No one pathway takes priority over the others; instead, plaintiffs can choose to effect service under any of the three options provided by the Rule. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Rule 4(f)(3) provides that plaintiffs may serve defendants "by other means not prohibited by international agreement, as the court orders." As discussed, the SEC moved under this Rule for authorization to serve Campo via email, which the Court granted. Min. Order of Sept. 24, 2024. In so ruling, the Court concluded that under Rule 4(f)(3), "no international agreement prohibit[s] email service." *Id.* Campo disagrees. He argues that the Hague Service Convention, and thus Rule 4, prohibited the SEC from serving him in that way. Not so.

The Hague Service Convention is a 1965 multilateral treaty that "was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Id.* Once received, the central authority then serves the intended recipient under the service laws of that country. *Id.* at 699. Relevant here, Article 10 of the Convention also lists three forms of alternative service that "[p]rovided the State of destination does not object, the present Convention shall not interfere with." 20 U.S.T., at 363. One of those—Article 10(a)—is service "by postal channels, directly to persons abroad." *Id.* The methods of alterative service encompassed by Article 10 are not prohibited by the Convention, at least whenever the relevant country has not objected. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017).

4

The United States and Colombia are parties to the Convention, and Colombia has not objected to Article 10 generally (or to service by email specifically). ECF 16 at 5–6. Thus, if email service counts as service by "postal channels," then the Convention clearly does not prohibit it, and service on Campo was valid under Rule 4(f)(3). For the reasons explained below, email service is included as service by "postal channels."

A "channel," as one might expect, is simply "a means of passage or transmission." *Channel*, *The New Merriam-Webster Pocket Dictionary* 81 (Pocket Cardinal ed. 1964). "[P]ostal" means "of or relating to the mails or the post office." *Postal*, *The New Merriam-Webster Pocket Dictionary*, *supra*, at 387. "[M]ail" means "postal matter," *Mail*, *The New Merriam-Webster Pocket Dictionary*, *supra*, at 300, or, less circularly, "letters, papers, etc. received by, or for, a person," *Mail*, *Webster's New World Dictionary of the American Language* 883 (College ed. 1968). And finally, a "letter" can simply be "a written . . . communication." *Letter*, *The New Merriam-Webster Pocket Dictionary*, *supra*, at 288. "Postal channels," therefore, would seem to cover methods of transmitting written communications directly to another person, a definition that neatly covers email: "A communication exchanged between people by computer." *Email*, *Black's Law Dictionary* (12th ed. 2024).

Still, "postal channels" could be interpreted more narrowly to cover only "letters, papers, packages, etc. handled, transported, and delivered *by the post office*." *Mail*, *Webster's New World Dictionary of the American Language*, *supra*, at 883 (emphasis added). But "[t]reaties are construed more liberally than private agreements, and to ascertain their meaning [the Court] may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 700 (quotation omitted). For the Hague Service Convention, the Supreme Court has turned to "the Convention's

drafting history, the views of the Executive, and the views of other signatories." *Water Splash, Inc.*, 581 U.S. at 280. And those sources confirm that "postal channels" covers email.

For example, signatories often send delegates to Special Commissions that review the Convention and issue conclusions and recommendations. And the 2003 Special Commission noted that private couriers—not just state-run postal services—are "the equivalent of the postal channel."[2] Indeed, that same year, the Special Commission "stressed that the operation of the Convention [is] to be considered in light of a business environment in which use of modern technology [is] now all pervasive, and that the electronic transmission of judicial communications is a growing part of that environment."[3] So, it concluded, "the transmission of documents internationally for the purposes of the Convention can and should be undertaken by IT-Business methods including e-mail."[4] Parties to the Convention were thus "encouraged to explore ways" to "more widely use[]" "technological developments" "to enable service."[5] The 2009 and 2014 Special Commissions also noted the increased use of electronic service under the Convention.[6]

More recently, the 2024 Special Commission unambiguously concluded "that Article 10(a)

---

[2] Special Commission on the Practical Operation of the Hague Apostille, Evidence, and Service Conventions, *Conclusions and Recommendations* ¶ 56 (2003), https://assets.hcch.net/docs/0edbc4f7-675b-4b7b-8e1c-2c1998655a3e.pdf.

[3] *Id.* ¶ 59.

[4] *Id.* ¶ 62.

[5] *Id.* ¶ 64.

[6] Special Commission on the Practical Operation of the Hague Apostille, Service, Evidence and Access to Justice Conventions, *Conclusions and Recommendations* ¶¶ 38–39 (2009), https://assets.hcch.net/docs/5bf65314-4f55-42b5-9b0c-770f2bfccd37.pdf; Special Commission on the Practical Operation of the Hague Service, Evidence and Access to Justice Conventions, *Conclusions and Recommendations* ¶ 37 (2014), https://assets.hcch.net/docs/eb709b9a-5692-4cc8-a660-e406bc6075c2.pdf.

includes transmission and service by e-mail, insofar as such method is provided by the law of the State of origin and permitted under the law of the State of destination."[7] And that accords with the current view of the Executive Branch, which concluded in 2022 that "service by postal channels under Art. 10(a)" includes "service by e-mail."[8]

All this is consistent with the parties' broad, flexible view of the term "postal channels" when the Convention was drafted. For example, the parties rejected a narrow reading limiting the phrase to "registered mail." *Water Splash, Inc.*, 581 U.S. at 281 (quotation omitted). And the Supreme Court has noted that "the Rapporteur's report on a draft version of Article 10—which did not materially differ from the final version—stated that the 'provision of paragraph 1 also permits service . . . *by telegram.*'" *Id.* (emphasis added) (quotation omitted). Obviously, like email, telegram involves the transmission of written communications electronically, and without the involvement of the post office.

Finally, although courts are split on the issue, many have recognized that email is likely covered by the term "postal channels." *See, e.g.*, *Agha v. Jacobs*, No. 07-cv-1800, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) ("[Plaintiff]'s attempt to distinguish email and facsimile

---

[7] Special Commission on the Practical Operation of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, and the Convention of 25 October 1980 on International Access to Justice, *Conclusions & Recommendations (C&R)* ¶ 105 (2024), https://assets.hcch.net/docs/6aef5b3a-a02c-408f-8277-8c995d56f255.pdf.

[8] United States of America, *Questionnaire Relating to the* Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters *(Service Convention)* ¶ 23.4 (2022), https://assets.hcch.net/docs/e40165e3-4301-41fe-8d70-3d34a3e251ed.pdf. Even so, this interpretation carries only modest weight in the Court's analysis because it conflicts with older Executive interpretations. *See* United States of America, *Questionnaire of July 2008 Relating to the* Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters *(Service Convention)* ¶ 66(b) (2008), https://assets.hcch.net/upload/wop/2008usa14.pdf.

7

from the 'postal channels' referred to in the text of Article 10 is unavailing."); *Media Trademark & Licensing Ltd. v. COINGEEKLTD.COM*, No. 21-cv-00214, 2021 WL 2895289, at *5 (D. Ariz. July 9, 2021) (recognizing that the Convention's inclusion of telegram as a postal channel supports the position that email is a postal channel); *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014) ("In particular, in Article 10, the Convention provides for service on a person located abroad through 'postal channels,' an expression which might be interpreted to allow for service via e-mail." (citation omitted)).

All of that said, even if email does not count as a "postal channel," the Court would *still* find that the SEC's service on Campo was proper under Rule 4(f)(3). In that case, the Convention would not "prohibit" service by email; it would simply not address service by email at all. This is a commonly held view by courts, even if many have not spelled out their reasoning. *See, e.g.*, *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 17 (D.D.C. 2016); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 261 (S.D. Ohio 2013); *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-cv-9913, 2015 WL 3457452, at * 7 (S.D.N.Y. June 1, 2015). But on this too, there is a split of authority.[9]

### B.   The SEC's Service on Campo by Email Complied with Due Process

Campo next argues that service by email violated his due-process rights because (1) email is too unreliable to be used to effect service except as a last resort and (2) the SEC has not shown

---

[9] Some courts have suggested that, for purposes of Rule 4(f)(3), the Convention should be understood to "prohibit" any mode of service that it does not specifically address. *See, e.g.*, *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 416–17 (N.D. Tex. 2020); *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471–72 (D. Mass. 2020); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 983–84 (N.D. Cal. 2020). In short, the Court is not persuaded by their reasoning.

that Campo "had actual notice of the Complaint." ECF No. 15 at 4–5. Both arguments fail.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "[T]he constitutional validity of any chosen method" of service thus turns on whether "it is in itself reasonably certain to inform those affected" of the suit. *Id.* at 315. "[T]he Due Process Clause does not demand actual, successful notice, but it does require a reasonable effort to give notice." *Small v. United States*, 136 F.3d 1334, 1336 (D.C. Cir. 1998). So courts must "examine[] the surrounding circumstances to determine whether the government has shown, not that actual successful notice occurred, but that it made reasonable efforts to give actual notice to the intended recipient." *Lepre v. Dep't of Lab.*, 275 F.3d 59, 70–71 (D.C. Cir. 2001).

The SEC has made that showing here. It served Campo by sending the complaint and summons to campojb@yahoo.com. ECF No. 10-1 ¶ 2. Campo himself provided that email address to the SEC during its investigation. ECF No. 8 ¶ 3. He has used it since at least 2021. *Id.* ¶ 4. And in July 2024, Campo's former counsel told the SEC that he had been communicating with Campo primarily through that email. *Id.* ¶ 5. Courts routinely find that email service is reasonably calculated to inform a defendant of the pendency of an action when the plaintiff shows that the defendant "actively use[s]" the relevant email address, *United States v. Dinh*, No. 20-cv-1794, 2020 WL 4474494, at *3 (M.D. Fla. Aug. 4, 2020), or when the defendant "himself provided his email address" to the plaintiff, *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-cv-21296, 2016 WL 8677230, at *4 (S.D. Fla. Oct. 14, 2016).

Campo first responds by arguing that email should be used only as a last resort due to

"delivery issues and the inability to confirm actual notice." ECF No. 15 at 5. But the Court knows of no case establishing such a rule. And the cases Campo cites do not support his proposition. *Microsoft Corp. v. Gameest International Network Sales Co.*, which Campo says "emphasize[s] that email service should only be used as a last resort," *id.* at 5, does no such thing, No. 17-cv-02883, 2017 WL 4517103, at *5 (N.D. Cal. Oct. 10, 2017). Instead, it broadly blesses email service "where defendants conduct commercial internet activities." *Id.* And in *Rio Properties, Inc. v. Rio International Interlink*, the Ninth Circuit, "[w]ithout hesitation," concluded that email service was not only proper, but also "the method of service most likely to reach" the defendant. 284 F.3d at 1017. It noted that "the business community" has "zealously embraced" email, often making it "the method of communication" defendants most often "utilize[] and prefer[]." *Id.* at 1017–18. And when dealing with "an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the *only* means of effecting service of process." *Id.* (emphasis added). So even though service by email may have "limitations," courts have "discretion . . . to balance the limitations of email service against its benefits in any particular case," *id.*, which is what the Court did here in permitting the SEC to serve Campo by email.

Campo also argues that service was improper because the SEC has not shown that he "had actual notice of the Complaint." ECF No. 15 at 4. The SEC disputes this point, but, in the end, whether Campo had "actual notice" is irrelevant. "[T]he Due Process Clause does not demand actual, successful notice." *Small*, 136 F.3d at 1336. All it requires is that the SEC "made reasonable efforts to give actual notice to the intended recipient." *Lepre*, 275 F.3d at 71. The SEC's email service meets that standard.

**IV.    Conclusion**

For all the above reasons, the Court will grant in part and deny in part Campo's Motion to

Dismiss Default Judgment for Insufficient Service of Process, ECF No. 15.  The Court will grant the motion insofar as it seeks to set aside the entry of default and deny it insofar as it seeks to dismiss the complaint.  A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: September 9, 2025